IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:12-cr-00159-1 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| CHAD EDWARD WARRICK | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Emergency Motion for Compassionate Release and Motion for Appointment of Counsel (Doc. No. 178, "Motion"). Via the Motion, Defendant seeks a reduction of his 300-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 182, "Response"), arguing that the Motion should be denied because Defendant has not established "extraordinary and compelling reasons for his release" and consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

---

[1] Motions like the instant Motion are generally known as ones for "compassionate release," and Defendant's requested relief appropriately can be referred to and conceived of as "compassionate release" or "sentence modification" (or "sentence reduction"). *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

BACKGROUND

On August 8, 2012, Defendant was charged in a two-count indictment with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and (2) (Count One); and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. 924(c)(1)(A) (Count Two) (Doc. No. 20). On September 3, 2014, Defendant pled guilty to the two counts of the indictment pursuant to a Rule 11(c)(1)(B) plea agreement. (Doc. No. 96). On December 16, 2014, visiting United States District Judge Marvin E. Aspen sentenced Defendant to serve 180 months of imprisonment on Count One and 120 months of imprisonment on Count Two, to run consecutively, followed by three years of supervised release. (Doc. No. 117).[2] Defendant has been serving his sentence at USP Canaan. According to BOP, Defendant's release date is February 17, 2035. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed May 19, 2021).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for

---

[2] The undersigned took no part in the trial or sentencing of Defendant and indeed was at no point assigned to Defendant's case until the instant Motion was filed.

[3] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
 (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

---

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ."

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[4] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other

---

[4] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it is using in the aftermath of *Jones*.

person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[5] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

---

[5] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

## ANALYSIS

### APPOINTMENT OF COUNSEL

Via the Motion, Defendant seeks appointment of counsel. The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). The decision of whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court. *See United States v. Stephens*, 2020 WL 3250226 at *2 (E.D. Mich. June 16, 2020). "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Defendant fails to present any unique circumstances justifying appointment of counsel. A compassionate release request is not a particularly complex claim factually or legally. *See United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that the defendant appeared able to adequately present his claim). Defendant has failed to articulate why he is unable to present his request for compassionate release pro se. Moreover, the Court believes that it is able to fairly adjudicate such motions even though one side (and not the other) is

unrepresented by counsel. That is not to say that learned counsel cannot contribute something, especially something regarding nuances, to a defendant's cause on these motions. But it is to say that typically, the degree of substantive merit of these very fact-based motions is evident to the Court even without learned counsel advocating the merits on the defendant's behalf. Accordingly, Defendant's request for counsel is DENIED, and the Court will proceed to the merits of the Motion.

COMPASSIONATE RELEASE REQUEST

I. <u>EXTRAORDINARY AND COMPELLING REASONS</u>

To grant the Motion, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant must show—bears the burden to show—that extraordinary and compelling reasons exist warranting his release. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (noting that to grant a motion for compassionate release, "the court must find that extraordinary and compelling reasons warrant [a sentence] reduction") (internal quotation marks omitted); *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020) ("A defendant bears the burden to show special circumstances meeting the bar set by Congress and the Sentencing Commission for compassionate release to be granted.") *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) (denying motion for compassionate release because "[the defendant's] circumstances do not meet the burden of extraordinary and compelling.").

Defendant claims that his underling medical conditions (hypertension, obesity, and spontaneous pneumothorax) combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for his release. (Doc. No. 178 at 1).

In its Response, the Government argues that Defendant's medical records do not reflect that he is obese or has been diagnosed with spontaneous pneumothorax. (Doc. No. 182 at 8). And while his medical records do reveal that Defendant has been diagnosed with hypertension, the Government argues that "[h]is hypertension appears to be well managed with medication" and the CDC states that hypertension only "might" be linked to an increased risk of severe illness due to COVID-19. (*Id.*). The Government further argues that Defendant's medical records also confirm that Defendant tested positive for COVID-19 and was asymptomatic. (*Id.*). Thus, the Government argues that Defendant's "medical conditions and age, even when considered alongside the COVID-19 pandemic," do not rise to the level of extraordinary and compelling circumstances.

The Court need not decide today whether Defendant has met his burden to demonstrate that extraordinary and compelling reasons exists. The Court below decides that compassionate release is not available to Defendant even assuming *arguendo* that he is able to demonstrate extraordinary and compelling reasons.[6]

II.  SECTION 3553(a) FACTORS

The Government argues that Defendant's Motion should be denied because consideration of the Section 3553(a) factors militates against granting compassionate release to Defendant. (Doc. No. 182 at 11-15). The Court agrees, as reflected by the below analysis of factors. *See Jones*, 980

---

[6] *Jones* suggests that a district court has the discretion to assume *arguendo* that extraordinary and compelling reasons exist and then turn to the Section 3553(a) factors, inasmuch as *Jones* affirmed a district court that did exactly that. *See Jones*, 980 F.3d at 1108 ("Thus, the district judge in Jones's case permissibly assumed for the sake of argument that extraordinary and compelling circumstances existed[.]"). This appears to be an approach commonly taken by courts. *E.g.*, *United States v. Singleton*, No. CR 5:13-8-KKC, 2021 WL 614927, at *2 (E.D. Ky. Feb. 17, 2021) ("For purposes of this motion, the Court will assume that Singleton's health conditions amidst the COVID-19 pandemic in a prison setting present extraordinary and compelling circumstances that would warrant a sentence reduction. Even assuming, however, that extraordinary and compelling circumstances do exist that warrant a sentence reduction, the Court must still consider whether 'the factors set forth in section 3553(a) to the extent that they are applicable' support the requested sentence reduction.").

F.3d at 1112-13 (explaining that the district court must supply specific factual reasons in its consideration of the Section 3553(a) factors).

*The nature and circumstances of the offense* cut against compassionate release. During the instant offense of conviction, Defendant robbed a bank at gunpoint and discharged his firearm in the direction of a bank employee. (PSR at ¶ 6). The Court finds that this violent conduct undoubtedly constitutes dangerous behavior that cuts against a shortened sentence. *See United States v. Jones*, No. 2:95-CR-20, 2021 WL 836933, at *3 (S.D. Ohio Mar. 5, 2021) (holding that armed bank robbery was an "extremely serious" offense that weighed against a shortened sentence); *United States v. Blewett*, No. 06-20585, 2021 WL 289552, at *5 (E.D. Mich. Jan. 28, 2021) (same). Considering the violent nature of Defendant's bank robbery, the Court finds that the nature and circumstances of Defendant's underlying offense weigh against granting compassionate release.

*The history and characteristics of Defendant and the need to protect the public from further crimes of Defendant* cut against compassionate release.

The Government argues that this factor weighs against granting Defendant compassionate release because of Defendant's lengthy and significant criminal history, and his continued inability to correct his behavior in BOP custody. (Doc. No. 182 at 13-14). The Court agrees.

A review of Defendant's criminal history reveals that Defendant has a history of violent conduct. Prior to his instant offense, Defendant was twice convicted of aggravated robbery and Defendant brandished a firearm during the commission of both crimes. (PSR at ¶¶ 32, 33). And his acts of violence are not limited to strangers, as he was also convicted of assault that arose out of a domestic violence incident with his ex-wife when he struck her in the head. (PSR at ¶ 35). On

another occasion, Defendant was convicted of assault involving another intimate partner. (PSR at ¶ 39).

While incarcerated, Defendant has continued to struggle to follow rules and conform his conduct to societal norms, as he received seven disciplinary infractions ranging from interfering with security devices, disruptive behavior, possessing drugs or alcohol, refusing work and program assignments, and being unsanitary or untidy. (Doc. No. 182-3).

The Court finds that based on the above-described conduct, the history and characteristics of Defendant, and the need to protect the public from further crimes of Defendant, weigh against granting compassionate release. The Court does not presume this merely because Defendant is currently incarcerated for serious offenses. The inquiry is more comprehensive than that, involving most significantly a review of Defendant's entire criminal history. Combined with his current offense, his criminal record—which includes violent criminal conduct that occurred multiple times—prevents the Court from concluding that Defendant would not pose a danger to the community if released. Ultimately, Defendant's criminal record and continuous inability prior to the instant offenses to correct his criminal behavior demonstrates his repeated disrespect for the law and a substantial possibility (though admittedly, and fortunately, not a certainty) of recidivism. Accordingly, the Court concludes that these things weigh against granting compassionate release.

*The need to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court will first focus on Defendant's medical need to avoid a COVID-19 infection and, failing that, to avoid a poor outcome from a COVID-19 infection.

The Court will not act like it knows the extent to which Defendant's chances of COVID-19 infection would be lower if he is released than if he stays in BOP custody, or how much more likely a bad outcome upon infection would be for him as opposed to someone without his medical condition.[7] As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as some seem to have reversed themselves on various issues over time.[8] In short, information (whether virological or statistical) and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly or with certainty on any particular opinion or alleged fact merely because it was asserted at some juncture by a purportedly knowledgeable or reputable source.

Having said that, the Court notes that Defendant's current risk of a COVID-19 infection at USP Canaan is likely not significant, because reportedly there is currently only one active COVID-19 infection (of a staff member) at USP Canaan. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed May 19, 2021). Moreover, BOP is working diligently to distribute the COVID-19 vaccine in its facilities, with 175,331 total vaccine doses already administered to BOP staff and inmates. *See COVID-19 Vaccine Implementation*, Bureau

---

[7] According to Defendant's medical records, he tested positive for COVID-19 on January 15, 2021 and was asymptomatic. (Doc. No. 185 at 10). Even though there is reason to believe that the prior infection would have left Defendant with antibodies that would help prevent re-infection, it would be speculation to conclude that any future reinfection would result in the same outcome. On the other hand, it likewise would be speculative to assume that a second COVID-19 infection would result in a significantly worse health outcome for Defendant.

[8] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; the circumstances under which masks/face coverings should be worn; the extent to which COVID-19 may be transmitted via contact with inanimate surfaces; and whether an effective vaccine could be rolled out during calendar year 2020.

of Prisons, https://www.bop.gov/coronavirus/ (last accessed May 9, 2021). Specifically at USP Canaan, where Defendant is incarcerated, BOP has inoculated 163 staff members and 846 inmates as of today's date. *Id.* Early research reportedly has demonstrated thus far that vaccines are able to significantly reduce transmission rate of the virus. *See Pfizer Vaccine Appears to Reduce Coronavirus Transmission*, ScienceNews, https://www.sciencenews.org/article/coronavirus-covid-19-pfizer-vaccine-may-reduce-transmission (last accessed May 9, 2021). Although it is unclear from the record whether Defendant has been vaccinated, the vaccination efforts by BOP will nonetheless likely reduce the risk that Defendant will contract COVID-19 at USP Canaan. For all of these reasons, there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to substantially reduce his risk from COVID-19.

But perhaps most importantly, the Court cannot possibly say that in order to minimize Defendant's risk from COVID-19, Defendant *must be released*. On the contrary, he has an option that is, based on extant information, far more likely to minimize his risk: taking the vaccine. The Court does not presume to tell Defendant he must take the vaccine; that is solely his decision to make. But the fact that he *could* choose to take the vaccine—and thus decrease his risk of infection to a huge extent—means that his concerns about COVID-19 can be addressed in a way already employed by (reportedly) tens of millions of Americans. Release is not necessary to nearly eviscerate Defendant's risk from COVID-19, and Defendant certainly cannot obtain the extraordinary remedy of supervised release by the simple expedient of voluntarily keeping his risk relatively high by declining the vaccine.

*The sentencing guidelines and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* do not support compassionate release. The guideline sentence for Defendant on Count One was 188-235 months,

and the guideline sentence on Count Two was a mandatory minimum of 120 months to run consecutive. (PSR at 23). The Court sentenced Defendant to serve 180 months of imprisonment on Count One, a below-guidelines sentence, followed by a consecutive term of 120 months imprisonment on Count Two, for a total effective sentence of 300 months. (Doc. No. 117). Having specifically requested this sentence pursuant to Rule 11(c)(1)(C), (Doc. No. 96 at 13), Defendant conceded that the sentence as originally imposed was appropriate, and not too high. So a sentence substantially lower than 300 months would represent a disparity from what otherwise would be an appropriate sentence, and the question is whether the requested modified sentence would be disparately low, or whether instead it would be warranted based solely on the risk to Defendant from COVID-19.

The Court first looks at what the requested modified sentence actually would be. According to the BOP, Defendant has roughly 165 months of his sentence left to serve. *See* Federal Inmate Locator, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed May 19, 2021) (listing Defendant's projected release date as February 17, 2035). It is not clear whether good-time credit has been factored into BOP's calculated release date, but even assuming for purposes of calculating Defendant's remaining sentence that it has not,[9] Defendant still has well over half of his original sentence (300 months) left to serve. Thus, this modification in sentence would be a major reduction from what Defendant conceded was an appropriate sentence, and it would likewise represent downward variance of more than 50 percent from his guidelines sentence. And this fact may weigh against his release. *See United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be

---

[9] This assumption works in Defendant's favor because it maximizes the amount of time Defendant is deemed to have served already; if he has 165 months left to serve out of 300 months, then he has served 135 months. To the extent his projected release date accounts for X months of credit for good-time served, he has 165 months to serve on 300 minus X months, meaning that he has thus far served less time, *i.e.,* 135 minus X months.

served when addressing compassionate release motions); *Ruffin*, 978 F.3d at 1008 (affirming district court's denial of motion for compassionate release, in part because the defendant-inmate "has yet to serve even half of his 25-year sentence" and because "the court had already varied downward" by one-sixth the bottom of the guideline range). Although the guidelines of course are advisory only, and there is nothing wrong with below-guidelines sentences in general, the Court can (and in this instance does) treat such a requested variance as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

     Accordingly, the Court finds that to grant Defendant compassionate release would create an sentencing disparity among defendants with similar records who have been found guilty of similar conduct, and the Court simply cannot see how such a disparity in Defendant's favor would be a warranted one under the facts of this case. The Court also notes that the fact that Defendant has served nowhere near all of his sentence can weigh against Defendant not only on this factor, but also on other factors. *See Ruffin*, 978 F.3d at 1008 ("We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction."); *see also Jones*, 980 F.3d at 1115 (affirming the district court's denial of the defendant's compassionate release motion where the district court examined the Section 3553(a) factors and reasoned that the factors weighed against granting the motion because, among other things, the defendant "had served only two years of his decade-long sentence [for non-violent drug offenses] and that [the defendant] was a repeat offender").

Additionally, the Court cannot say that requested reduction of the Court's original sentence would fully reflect the seriousness of the offense Defendant committed, provide a just punishment for his conduct, and promote respect for the law. For those reasons, the Court finds that the Section 3553(a) factors also weigh in favor of denying Defendant's Motion.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 178) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE